UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| The Scott Fetzer Company, | ) | CASE NO. 1:16 CV 1570 |
| | ) | |
| Plaintiff, | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OPINION |
| Zurich American Insurance Company, | ) | AND ORDER |
| | ) | |
| Defendant, | ) | |

This matter is before the Court on the Parties' Cross Motions for Summary Judgment. Defendant Zurich American Insurance Company ("Zurich") and Plaintiff The Scott Fetzer Company ("Scott Fetzer or Fetzer") move for summary judgment on Plaintiff's bad faith claim asserted in Count Two of its Complaint. (ECF # 95 and #96 respectively.) Plaintiff also moves to recover its attorney fees as damages for its bad faith claim; and, regardless of the Court's decision on its bad faith claim, to recover attorneys' fees as damages for its declaratory judgment/breach of contract claim. (ECF #96) The motions are now fully briefed and ready for decision.

## PROCEDURAL AND FACTUAL BACKGROUND[1]

Scott Fetzer filed this action against its insurer Zurich asserting claims for Declaratory Judgment and Breach of Contract (Count 1) and bad faith (Count 2). Scott Fetzer is an insured under two policies providing general liability insurance issued by Zurich. The first was Policy No. GLO8979229-09 for the period of January 1, 2012 to January 1, 2013. The second was

---

[1] The factual background is taken from the Parties' filings and stipulations.

Policy No. GLO8979229-10 for the period of January 1, 2013 to January 1, 2014. All material terms of the Policies are identical. The Policies both provided the same limits of liability: $2,000,000 each occurrence with a $2,000,000 general aggregate limit. Both policies contained a per "occurrence" deductible under Coverage A–Bodily Injury and Property Damage Liability of $1,000,000 each "occurrence."

In 2013, three women, Kristl Thompson, Ashley Raby, and Corbie Leslie, filed suit in Missouri state court alleging that they had been sexually harassed and assaulted by a co-worker, John Fields, while selling Kirby vacuums door to door for Fetzer. (The "Thompson lawsuit"). The Thompson Plaintiffs asserted individual claims against Scott Fetzer alleging that Scott Fetzer negligently hired, retained and supervised John Fields, a convicted sex offender. Ms. Thompson alleged that Mr. Fields raped her and further sexually assaulted her in September and October of 2012. Ms Raby alleged that Mr. Fields sexually abused her by touching her without consent, verbally harassing her in person and on the phone and masturbating in front of her and exposing himself to her from May 2012 through August 2012. Ms. Leslie alleged that Mr. Fields sexually abused her from December 2012 through February 2013 by making lewd comments to her, touching her without her consent, and masturbating in her presence and exposing himself to her without consent during sales calls. All of the incidents involving Mr. Fields and the three Thompson Plaintiffs occurred at different times and in different locations. Zurich accepted coverage under the policies for the Thompson lawsuit. Ultimately, Scott Fetzer and Zurich settled the claims asserted by each Plaintiff in the Thompson lawsuit with reservations. Other than the settlement amounts to be paid, the three settlement agreements, filed under seal, were basically the same. One settlement amount reached with one of the Thompson Plaintiffs exceeded the One

Million Dollar deductible amount set forth in the Policies and Zurich paid a portion of that settlement. Zurich did not reimburse Scott Fetzer for the amounts paid in settlement to the other two Thompson Plaintiffs because it applied new deductibles, treating each Plaintiff's claim as a separate "occurrence" under the Policies.

Thereafter, Scott Fetzer filed the instant action asserting that Zurich breached the Policies by insisting that the allegations made against Scott Fetzer by the Thompson Plaintiffs constituted three "occurrences" under the Policies. The Policies define "occurrence" to mean "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." The deductible endorsement contained in the Policies provides that the "per occurrence" deductible applies "to all sums payable . . . as the result of an accident, including continuous or repeated exposure to substantially the same general harmful conditions, regardless of the number of persons or organizations who sustained damages or to whom sums are payable because of that 'occurrence'." Scott Fetzer argued that the Thompson lawsuit and the three settlements represent one "occurrence"–as the injuries of all three women were caused by the purported negligence of Scott Fetzer in connection with the hiring, retention, and supervision of Fields. Zurich argued that the Thompson lawsuit involved multiple "occurrences" because the claims involved different persons, locations, situations and even different policy years. Both Zurich and Scott Fetzer moved for summary judgment on the issue of how many occurrences, and therefore how many deductibles, were involved in the Thompson settlements. The motions were referred to Magistrate Judge Thomas Parker for a Report and Recommendation.

In his Report and Recommendation, Magistrate Judge Parker noted that under Ohio law, where provisions of an insurance contract are reasonably susceptible to more than one

interpretation, they must be "strictly construed against the insurer and liberally in favor of the insured." *King v. Nationwide Ins.*, 35 Ohio St.3d 208 (1988), paragraph one of the syllabus. However, when the provisions of an insurance policy are clear and unambiguous, "the words and phrases used therein must be given their natural and commonly accepted meaning consistent with the intent of the parties." *Darno v. Westfild Ins. Co.*, 2015-Ohio-2619, ¶ 11, 34 N.E.3d 967, 970. Magistrate Judge Parker observed that neither party argued that the Policies' definition nor use of the word "occurrence" was ambiguous and further noted that the Policies define "occurrence" as it is often defined in insurance policies, and that courts have found this definition unambiguous. *See, e.g., Westfield Ins. Co., V. Tech Dry, Inc.*, 336 F.3d 503, 507-08 (6th Cir. 2003); *Big Lots Stores, Inc. v. Am. Guarantee & Liab. Ins. Co.*, 240 F.Supp. 3d 725, 731 (S.D. Ohio 2017) (ECF #51, p.10)

Magistrate Judge Parker determined that the "occurrences" at issue here were the negligent acts of Scott Fetzer, including its failure to inform each Thompson Plaintiff of material information, its policies regarding sexual harassment, its hiring and retention of Fields, and its supervision of Fields in his interactions with each Thompson Plaintiff. Having thus identified the "occurrence" at issue Magistrate Judge Parker then proceeded to determine the number of occurrences under the Policies. Magistrate Judge Parker used the "causation approach" as advocated by Scott Fetzer, to focus on the underlying circumstances which resulted in the Thompson Plaintiffs' claims for damages against Scott Fetzer in order to determine the number of occurrences, rather than the number of persons injured. "Under the cause test, the number of occurrences is determined by reference to the cause or causes of the damage or injury, rather than by the number of individual claims. *Cincinnati Ins. Co. v. ACE INA Holdings, Inc.*, 2007-Ohio-

5576, 175 Ohio App. 3d 266, 866 (Ohio Ct. App. 2007) While Scott Fetzer contends that the Thompson lawsuit and settlements represent a single occurrence of purported negligence of Scott Fetzer in connection with the hiring, retention, and supervision of Fields, Magistrate Judge Parker determined that there was no single "occurrence" that was the proximate cause of all of the Thompson Plaintiffs' injuries. For example, each Thompson Plaintiff alleged that Scott Fetzer was negligent in supervising Field's conduct regarding each separate Plaintiff and unlike negligent hiring, "which occurs only once per employee-employer pair," negligent supervision is invariably not one "occurrence." *See Lee v. Interstate Fire & Cas. Co.*, 86 F. 3d 101, 104-05 (7th Cir. 1996). In *Lee*, the Seventh Circuit declined to hold that a Roman Catholic Diocese's negligent supervision of a priest was one occurrence. The Court noted that "the same kind of negligent act can occur several times with separate injuries, producing several occurrences." *Id.* at 104. Thus, Magistrate Judge Parker found that the negligence of Scott Fetzer with respect to each of the three Thompson Plaintiffs constitutes a separate occurrence under the Policies. This Court agreed and entered summary judgment in favor of Zurich.

On appeal, the Sixth Circuit reversed stating that "[a]ll Fetzer must do to prevail is show that there is ambiguity in the contract and provide a fair interpretation of the ambiguity under which it qualifies for coverage." (ECF #59 at 6) The Court found that the fact that Zurich acknowledged that there were two different ways to look at the definition of "occurrence" shows there is an ambiguity in the definition. *Id.* at 7. The Court agreed with the finding of the Magistrate Judge that the relevant occurrence here is Fetzer's negligent supervision of Fields. Finally, the Court, applying the cause test, determined that negligent supervision was one occurrence, and not the multiple instances of negligent supervision that Magistrate Judge Parker

5

found. The Court concluded that since it is reasonable to read the policy as Fetzer suggested and determine that there is just one occurrence, "it is not necessary for us to take a position on whether Fetzer's interpretation of the contract is the best one so long as it is reasonable." *Id*. at 6-7.

On remand, in accordance with the Sixth Circuit's mandate, this Court granted Fetzer's Motion for Partial Summary Judgment (ECF# 19) and entered judgment in favor of Plaintiff on Count One of the Complaint and deferred Plaintiff's request for a hearing on damages, including attorneys' fees on Count One, until after a determination of liability on Count two. (ECF #75) Thereafter, the parties conducted fact and expert discovery on Plaintiff's bad faith claim and submitted the cross motions for summary judgment at issue here.

## STANDARD OF REVIEW FOR SUMMARY JUDGMENT

Summary judgment is appropriate when the court is satisfied "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The burden of showing the absence of any such "genuine issue" rests with the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (citations omitted). The court will view the summary judgment motion in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). At its core, the summary judgment analysis entails "the threshold inquiry of determining whether there is the need for a trial--whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

## DISCUSSION

**1. Bad Faith Claim**

Under Ohio law, an insurer has the duty to act in good faith in the handling and payment of the claims of its insured. A breach of this duty will give rise to a cause of action in tort against the insurer. *Hoskins v. Aetna Life Ins. Co.*, 6 Ohio St. 3d 272, 272, 452 N.E.2d 1315, 1316 (1983). "Mere refusal to pay insurance is not, in itself, conclusive of bad faith. But when an insured [sic] insists that it was justified in refusing to pay a claim of its insured because it believed there was no coverage of the claim, " * * * such a belief may not be an arbitrary or capricious one. The conduct of the insurer must be based on circumstances that furnish reasonable justification therefor." *Id.* at 277. The test, therefore, is not whether the defendant's decision to deny benefits was *correct,* but whether the decision to deny benefits was arbitrary or capricious, and there existed a reasonable justification for the denial. *Thomas v. Allstate Ins. Co.*, 974 F.2d 706, 711 (6th Cir. 1992). Under *Zoppo v. Homestead Ins. Co.*, 71 Ohio St.3d 552, 644 N.E.2d 397 (1994), to prevail on a bad faith claim, an insured must show that there was no reasonable justification for the manner of handling or for the denying of the insured's claim. Summary judgment in favor of the insurer is appropriate where, viewing the evidence in the light most favorable to the insured, the claim was fairly debatable and the refusal was premised on the status of the law at the time or the facts that gave rise to the claim. *Tokles & Son, Inc. v. Midwestern Indemnity Co.,* 65 Ohio St.3d 621, 605 N.E.2d 936, 943 (1992).

Scott Fetzer argues that Zurich violated well established principles of insurance contract interpretation when it failed to look for coverage where it reasonably could be found and failed to

resolve any ambiguities in its insurance policies in favor of the insured. In January 2016, Scott Fetzer provided Zurich with a written explanation why the Thompson lawsuit constitutes a single occurrence under the policies. Instead of construing the Policies in Fetzer's favor, Zurich maintained its position that the events at issue in the Thompson lawsuit constituted multiple occurrences. Scott Fetzer asserts that Zurich ignored its own best practices and conducted an inadequate investigation as evidenced by the lack of documentation in Zurich's claim file.

Zurich contends that it handled the Fetzer claims appropriately and in good faith. Upon initial evaluation of the Thompson lawsuit, Zurich determined that there was coverage under the Policies. As such, in February 2014, Zurich issued two reservations of rights letters to Fetzer stating that subject to the satisfaction of the applicable deductibles, Zurich would participate in the funding of the reasonable and necessary costs incurred in Fetzer's defense. In this case, Fetzer had selected a third party administrator, Gallagher Bassett, to handle its claims under the Zurich Policies and it was Gallagher Bassett and Fetzer's defense counsel who directed and oversaw the defense of the Thompson lawsuit. When Zurich first learned in October 2015 that the Thompson lawsuit claims may exceed Fetzer's deductibles, Zurich began a further investigation into the number of occurrences. Zurich claims professionals, including John Weiss and Alexandra Rowe, sought and reviewed the pleadings, deposition transcripts and defense counsel assessments in the Thompson lawsuit in order to fully understand the facts in each claim. They also consulted different treatises that they have in the department, including Ostrager and Newman, to review the case law with respect to the number of occurrences specifically with respect to sexual molestation and harassment. After discussing all of that information, they sent their decision to legal for review and to confirm that they were making the right decision regarding the number of

occurrences. When pressed at deposition by Plaintiff's counsel to state the specific facts that supported his conclusion that there were three occurrences, Mr. Weiss replied that each Thompson Plaintiff had different encounters with The Scott Fetzer Company and other people named in the Complaint, and that Scott Fetzer's alleged negligence in supervising or monitoring Fields was different as to each of the individual Plaintiffs because each woman's claim arose at different times and places and in different circumstances resulting in different injuries. Mr. Weiss said that they reviewed Fetzer's counter position regarding the number of occurrences but based upon their review of the facts in this case and the law did not agree that it was correct. Further, based on their review they did not believe there was an ambiguity in the definition of "occurrence."

As evidenced by Magistrate Judge Parker's Report and Recommendation and this Court's adoption of it, Zurich's position that there were three occurrences at issue here was reasonable and its rejection of Fetzer's position was not arbitrary or capricious. Moreover, Plaintiff has not shown that Zurich failed to investigate and assess the claim in an honest way. The fact that the claim file did not contain every case or treatise that was reviewed and every conversation or decision does not demonstrate bad faith. Mr. Weiss explained that the claim file in this case was different because of the existence of Fetzer's chosen third party administrator, Gallagher Bassett. Mr. Weiss' testimony clearly describes the process that he and others at Zurich undertook to evaluate this claim. Fetzer has failed to carry its burden to show that there was no reasonable justification for Zurich's manner of handling or for the denying of the Fetzer's claim. As such its Motion for Summary Judgment on Count Two is denied.

Looking at the evidence submitted here in the light most favorable to the Scott Fetzer, the

of the number of occurrences at issue here was fairly debatable and Zurich's refusal to adopt Fetzer's position on that issue was premised on the status of the law at the time or the facts that gave rise to the claim. Accordingly, Defendant's Motion for Summary Judgment on Count Two is granted.

**2. Attorneys fees for Count I**

Fetzer asserts that it is entitled to attorneys' fees for two independent reasons: (1) if the Court grants its motion for summary judgment on Fetzer's bad faith claim it would be entitled to attorneys' fees; and, (2) its breach of contract claim is an indemnity agreement that permits assessment of attorneys' fees. The first option is moot as the Court herein has denied Scott Fetzer's Motion for Summary Judgment on its bad faith claim and granted Zurich's. Fetzer's assertion that it is entitled to attorneys' fees on its breach of contract claim, despite not seeking attorneys' fees for that claim in its Complaint, is based on two Supreme Court of Ohio cases involving non-insurer indemnity agreements. *See Allen v. Standard Oil Co.*, 2 Ohio St.3d 122 (1982); *Worth v. Aetna Cas. & Sur. Co.*, 32 Ohio St.3d 238 (1987).

*Allen* involved an indemnity agreement between Standard Oil Company and Refiners Transport & Terminal Corporation. Having determined that the indemnitor (Refiners) was obligated to indemnify Standard Oil under the terms of their agreement, the Court next determined the extent of Refiner's liability. Refiners argued that it should only be liable for the defense costs of the underlying action, and not for the costs of Standard Oils' subsequent efforts to enforce the contractual language. Standard Oil argued that it was entitled to recover all of its expenses to date, including attorney fees citing *Motorists Mutual v. Trainor*, 33 Ohio St.2d 41 (1973) in support. *Motorists* is a declaratory judgment action brought by an insurer against its

insured seeking determination of its rights under the policy after the insurer refused to defend the insured. The Court explained:

> This action was brought to serve the sole interest of the insurer and arises out of Motorists' basic unwillingness to defend a suit in which it had a clear legal duty to defend, which even Motorists ultimately acknowledged. The rationale behind allowing attorney fees to date in defending the negligence action is that the insured must be put in a position as good as that which he would have occupied if the insurer had performed its duty. The fact that the insurer brings a declaratory judgment action after it has failed in its duty to defend should not require the insured to incur expenses which he cannot recover.

*Motorists*, 33 Ohio St. 2d at 47. The *Allen* Court disregarded the factual distinctions between *Motorists* and *Allen* finding that they do not affect the applicable legal principle, "which is that Refiners failed in its duty to defend and this failure should not require [Standard Oil] to incur expenses that it cannot recover." *Allen*, 2 Ohio St.3d at 125. The Court rejected Standard Oil's argument that *Motorists* should not apply to it because it is not an insurer; stating that Standard Oil's acceptance of the indemnity provision placed it in the position of an insurer to the extent provided for in the agreement. The Court held "that when an indemnitor wrongfully refuses to defend an action against an indemnitee, the indemnitor is liable for the costs, including attorney fees and expenses, incurred by the indemnitee in defending the initial action and in vindicating it right to indemnity in a third-party action brought against the indemnitor." *Id*. at 126.

*Allen* is distinguishable in that the agreement at issue there did not involve an insurance contract. More importantly, both *Allen* and *Motorists* involved an insurer or an indemnitor who wrongfully refused to defend an action against its insured or its indemnitee. Here, Zurich accepted the defense and coverage with reservations.

Fetzer also cites *Worth v. Aetna Casualty & Surety Co.*, *supra*, in support of its claim for

11

legal fees on Count One. In *Worth*, two senior executives entered employment agreements with their former employer prior to an expected acquisition to provide compensation and fringe benefits in the event that the executives were terminated after the change in control, or if, within two years, they determined that their employment status or responsibilities had been diminished under the successor company. The agreements also provided that $500,000 would be set aside to reimburse the executives' costs of litigation to enforce the employment agreement. The former employer purchased a surety bond from Aetna in the amount of $500,000 to fulfill its obligations under the employment agreements. When the executives requested that the successor employer honor the employment agreements, it declined and refused to pay their legal expenses incurred in attempting to enforce the employment agreements. After Aetna failed to respond to the executives' demand for reimbursement of their legal expenses, they filed suit. The trial and appellate courts determined that the indemnity provisions to provide reimbursement for legal expenses were void as against public policy. The Supreme Court of Ohio held: "an indemnitor's express agreement to indemnify an indemnitee for qualified legal expenses incurred is enforceable and is not contrary to Ohio's public policy. In the event that the indemnitor wrongfully refuses to honor its obligation, the indemnitee may recover its legal expenses." *Id.* 32 Ohio St.3d at 242. Unlike the situation in *Worth*, the insurance contract at issue here does not have any provision that expressly requires the reimbursement of legal expenses, thus *Worth* is not relevant here.

 None of these cases change the prevailing law in Ohio that "an insured is not entitled to recover attorneys' fees when it is successful in a suit against its insurance company for payments under the terms of the policy, absent a finding of bad faith in the denial of coverage." *B-T*

*Dissolution v. Provident Life and Acc. Ins. Co., Inc.*, 192 Fed. Appx 444, 446 (6th Cir. 2006); *Carpenter v. Liberty Insurance Corp.*, 413 F.Supp.3d 727, 733-734 (S.D. Ohio 2019)(Ohio does not recognize attorney fees in breach of insurance contract claims, thus Plaintiffs are limited to policy limits coverage.); *Snodgrass v. MGA Ins. Co., Inc.*, 1998 WL 670714 at *5 (Ct. App. Ohio Sept. 29, 1998)(Court found duty to provide coverage under insurance contract was "fairly debatable" thus was not in bad faith. As such, "[i]n the absence of either statutory authorization or conduct amounting to bad faith, Ohio Courts must follow the 'American rule' prohibiting an award of attorney fees.") The factual situation in this case falls squarely within the prevailing Ohio law as set forth by the Sixth Circuit in *B-T Dissolution, supra.* As such Scott Fetzer is not entitled to recover attorneys' fees as damages for its breach of contract claim and its Motion for Summary Judgment on this issue is denied.

## CONCLUSION

For the reasons set forth above, the Defendant's Motion for Summary Judgment (ECF #95) is granted and the Plaintiff's Motion for Summary Judgment (ECF #96) is denied.

IT IS SO ORDERED.

_____
DONALD C. NUGENT
UNITED STATES DISTRICT JUDGE

DATE: March 24, 2021